*This opinion is subject to revision before final publication in the Pacific Reporter*

**2026 UT 18**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

FRANK PAUL REYOS,
*Appellant,*

*v.*

STATE OF UTAH,
*Appellee.*

No. 20240519
Heard January 26, 2026
Filed July 16, 2026*

On Direct Appeal

Third District Court, Salt Lake County
The Honorable James T. Blanch
No. 180901457

Attorneys:

Benjamin Miller, Salt Lake City, for appellant

Derek E. Brown, Att'y Gen., Michael Gadd, Asst. Solic. Gen.,
Salt Lake City, for appellee

ASSOCIATE CHIEF JUSTICE POHLMAN authored the opinion of the
Court, in which JUSTICE PETERSEN, JUSTICE NIELSEN, JUSTICE DENT,
and JUDGE MORTENSEN joined.

Before this case was decided, CHIEF JUSTICE DURRANT recused
himself from this case and JUSTICE HAGEN stepped down from the
court. JUSTICE DENT and COURT OF APPEALS JUDGE

---

* As of January 31, 2026, "The Supreme Court consists of seven
justices." UTAH CODE § 78A-3-101(1). Pursuant to Utah Supreme
Court Standing Order No. 18, this court sat and rendered judgment
in this matter as a division of five justices.

DAVID N. MORTENSEN, having reviewed the briefs and listened to a recording of the oral argument, substituted for CHIEF JUSTICE DURRANT and JUSTICE HAGEN and participated fully in this decision.

JUSTICE JORGENSEN became a member of the Court after oral argument in this matter and did not participate.

––––––––––––

ASSOCIATE CHIEF JUSTICE POHLMAN, opinion of the Court:

**INTRODUCTION**

¶1 As we have often said, an appellant must comply with the deadlines prescribed by the Utah Rules of Appellate Procedure to properly invoke appellate jurisdiction. Under rule 4, a notice of appeal typically must be filed within thirty days after the entry of the judgment or order appealed from. After that period expires, the rule allows a party to move the trial court to reinstate the thirty-day filing period, but motions to reinstate in criminal cases are treated differently from those in civil cases. UTAH R. APP. P. 4(f)–(g).

¶2 Under rule 4(f)—which codified the process set forth in *Manning v. State*, 2005 UT 61, 122 P.3d 628—a defendant in a criminal case may move to reinstate the period for filing a direct appeal upon a showing that the defendant was deprived of the right to appeal. UTAH R. APP. P. 4(f). The version of rule 4(f) at issue here had no time limit for such a motion. *Id.* (Jan. 2024). In contrast, under rule 4(g), a party in a civil case had (and continues to have) a deadline of moving to reinstate "within one year from the entry of judgment." *Id.* R. 4(g)(2).

¶3 In this case, after his murder conviction was affirmed on direct appeal, Frank Reyos filed a petition for postconviction relief under the Post-Conviction Remedies Act (PCRA), which the district court dismissed in March 2019. But Reyos did not timely appeal that order. He instead moved, in January 2024, to reinstate the time period to appeal the denial of his PCRA petition. Recognizing that his motion was four years too late under rule 4(g), Reyos urged the district court to apply rule 4(f) instead, because "[w]hile the legislature labeled PCRA actions as 'civil,' they are in effect 'quasi-criminal' proceedings."

¶4 But the district court concluded that "PCRA actions are civil—not quasi-criminal—for purposes of applying Rule 4 of the Utah Rules of Appellate Procedure." Accordingly, the court

applied rule 4(g), determined that Reyos's motion to reinstate was untimely, and thus denied Reyos's attempt to reinstate the period to directly appeal the dismissal of his PCRA petition.

¶5    Now appealing the district court's denial of his motion to reinstate, Reyos argues that Utah's "code, constitution, and legal history collectively argue against applying deadlines in postconviction cases." Thus, he claims, "this Court should permit postconviction appeals no matter when they are filed" or should, at a minimum, "adopt either a good cause exception or the *Manning* standard."

¶6    We affirm, holding that because Reyos has not engaged with the district court's reasoning, he has not shown that it incorrectly applied rule 4(g) to his motion to reinstate the period to file an appeal of the dismissal of his PCRA petition. We likewise do not reach Reyos's unpreserved constitutional argument challenging deadlines in postconviction appeals, and we decline to read a new exception into rule 4 or create a *Manning*-like exception.

## BACKGROUND

¶7    Reyos was convicted of aggravated murder and a gun-related offense, and his convictions were affirmed by the court of appeals. *State v. Reyos*, 2017 UT App 132, ¶ 1, 402 P.3d 113, *cert. denied*, 406 P.3d 249 (Utah 2017). After that defeat on direct appeal, Reyos represented himself in state district court and petitioned for postconviction relief under the PCRA, claiming prosecutorial misconduct and ineffective assistance of both his trial counsel and appellate counsel. *See generally* UTAH CODE §§ 78B-9-101 to -503. The district court granted summary judgment to the State on all claims and dismissed Reyos's PCRA petition in March 2019.

¶8    Still representing himself, Reyos did not file an appeal and instead sought a writ of habeas corpus in federal court in 2019. But in early 2022, the federal court denied habeas relief in part because Reyos failed to exhaust state remedies by not appealing the dismissal of his PCRA petition. *See Reyos v. Utah State Prison*, No. 19-CV-517, 2022 WL 901610, at *1–2 (D. Utah Mar. 28, 2022).

¶9    Almost two years later in January 2024, Reyos returned to the state district court and moved it to reinstate the thirty-day period to appeal the March 2019 order dismissing his PCRA petition. Now assisted by appointed counsel, Reyos conceded that

the legislature labeled PCRA actions as "civil"[1] and that a motion to reinstate the time to appeal in a civil matter is subject to a one-year time limit under rule 4(g) of the Utah Rules of Appellate Procedure.

¶10  To avoid untimeliness from being an impediment, Reyos argued that rule 4(f), which applies to criminal actions and had no time limit, "should apply to a motion to reinstate time to appeal" in a PCRA action. *See* UTAH R. APP. P. 4(f) (Jan. 2024).[2] He reasoned that because a "PCRA action is a collateral attack on a criminal conviction, arising out of the Utah constitution's guarantee of the writ of habeas corpus[,] PCRA proceedings are inextricably linked to criminal proceedings and should be recognized as 'quasi-criminal,'" not civil.[3] And Reyos asserted that he met rule 4(f)'s terms and the related *Manning* standard to have the time to file his appeal reinstated. *See generally Manning v. State*, 2005 UT 61, ¶ 31, 122 P.3d 628 (creating a process for reinstating the period to directly appeal a criminal case, which was later codified in rule 4(f)).

---

[1] UTAH CODE § 78B-9-102(1)(a) ("Proceedings under [the PCRA] are civil and are governed by the rules of civil procedure.").

[2] Because "we apply the law as it exists at the time of the event regulated by the law in question," *State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829, we focus on the version of rule 4 that was in effect when Reyos filed his motion in January 2024. That version did not contain a time limit on the filing of a motion to reinstate the period for filing a direct appeal in a criminal case. *See* UTAH R. APP. P. 4(f) (Jan. 2024). Since May 1, 2024, however, rule 4(f) requires that the "motion must be filed *within one year*, or within a reasonable time, whichever is later, from the day on which the defendant personally knew, or should have known in the exercise of reasonable diligence, of evidentiary facts forming the basis of the claim that the defendant was deprived of the right to appeal." *Id.* R. 4(f)(2) (2026) (emphasis added).

[3] A "quasi-criminal proceeding" is generally defined as a "civil proceeding that is conducted in conformity with the rules of a criminal proceeding because a penalty analogous to a criminal penalty may apply." *Proceeding*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "quasi-criminal proceeding"). For example, "juvenile delinquency is classified as a civil offense," but criminal procedure rules apply because "like a defendant in a criminal trial, an accused juvenile faces a potential loss of liberty." *Id.*

¶11 The State opposed Reyos's motion, stressing that it was filed "well-beyond the one-year limitations period imposed by rule 4(g)," and asking the district court to reject Reyos's argument "that postconviction proceedings are . . . quasi-criminal" and governed by rule 4(f). In support, it pointed to Utah Code subsection 78B-9-102(1)(a)'s language defining such proceedings as "civil" and asserted that Utah appellate courts have never characterized them "as anything other than civil."

¶12 Reyos replied that recognizing the PCRA's "quasi-criminal characteristics" and permitting him to file an untimely appeal under rule 4(f) "would not change the otherwise civil nature of PCRA proceedings." He emphasized that PCRA cases would still be governed by the Utah Rules of Civil Procedure. He further argued that granting relief under rule 4(f) would not "defy the will of the legislature" because "the authority to regulate the writ of habeas corpus lies solely with the judiciary." Finally, he asserted that *if* the legislature's definition of PCRA actions as civil "has crossed the line from a procedural rule into the substance of the writ, the PCRA runs afoul of the Utah Constitution."

¶13 At oral argument on Reyos's motion, the district court observed that Reyos had "shifted gears a little bit" between his opening brief and his reply brief. In the court's view, Reyos's original argument was "about how this language should be interpreted against the backdrop of the quasi-criminal nature of habeas petitions" and how they always involve underlying criminal convictions, but the "separation of powers part of it seemed to be new." The court also questioned whether Reyos's main argument was a matter of statutory interpretation, rule interpretation, or separation of powers.

¶14 Reyos responded that he was "trying to get access to" rule 4(f), "a judicial rule promulgated by the Supreme Court," and that if a separation-of-powers problem existed, it was because the legislature classified PCRA proceedings as civil. He then explained, "PCRAs are sort of different. And . . . the ultimate result of this wouldn't be . . . wanting the Supreme Court to come up with a different rule. It would be . . . acknowledging the quasi-criminal nature of these, [so that PCRA petitioners] get access to a criminal protection." He also stated that if the "Supreme Court wanted to promulgate a rule about PCRAs and reinstatement of time . . . , that would maybe resolve all these conflicts and [he] would just be

stuck with the rule" and "whatever time period" was set, unless it was "so draconian" that it violated due process.

¶15  The district court then pointed out that the Utah Supreme Court "had the opportunity" to change rule 4 given that the "PCRA has said explicitly that it's civil in nature for years and [the Supreme Court hasn't] undertaken to change the rule in recognition of [that] fact." The State agreed with this point, and Reyos similarly agreed that this court has authority to carve out "case specific rules for all manner of case types" but that "right now" there are "two camps," criminal and civil. And he reiterated that he was deserving of relief under rule 4(f).

¶16  After taking the matter under advisement, the district court issued a written ruling applying rule 4(g) and denying Reyos's motion to reinstate as untimely. It concluded that "PCRA actions are civil—not quasi-criminal—for purposes of applying Rule 4." It relied on the statutory language and caselaw characterizing PCRA proceedings as civil in nature, and it reasoned that "unlike juvenile cases and other proceedings Utah's appellate courts have characterized as quasi-criminal, PCRA actions in themselves impose no criminal consequences." Indeed, a petitioner "has already been convicted and sentenced, and the PCRA adds nothing to the punishment." And even if it were quasi-criminal, the district court observed that it "would not necessarily mandate extra procedural protections for petitioners" and that "it is not self-evident . . . that an even more generous outer time-limit [beyond one year] must be furnished to petitioners in PCRA cases."

¶17  Additionally, as it foreshadowed during oral argument, the district court assumed that "the Utah Supreme Court was aware the PCRA is considered civil in nature when it added Rule 4(f) . . . to codify motions to reinstate direct appeals in criminal matters in response to *Manning v. State*." The district court then viewed it as "likely" that we "would have used the occasion" of adding rule 4(f) to also "include a longer period for petitioners seeking reinstatement of PCRA appeals if [we] deemed such cases to possess 'quasi-criminal' characteristics requiring greater protections than ordinary civil litigants enjoy under Rule 4(g)." But because "Rule 4 makes no mention of PCRA cases as an exception to Rule 4(g)'s one-year limit to seek reinstatement of appeals in civil matters," the district court concluded that we must have intended PCRA cases to remain subject to rule 4(g).

¶18 Thus, the district court declined to apply rule 4(f) to appeals from PCRA cases and to reinstate the time period for Reyos to appeal its March 2019 dismissal of his PCRA petition. Assisted by different appointed attorneys during the briefing and oral argument stages, Reyos appeals the court's decision.

## ISSUE AND STANDARD OF REVIEW

¶19 Reyos contests the district court's denial of his motion to reinstate the time to file a direct appeal of its dismissal of his PCRA petition. We grant no deference to the district court's legal conclusions, including its interpretations of caselaw and procedural rules. *See Oseguera v. State*, 2014 UT 31, ¶ 9, 332 P.3d 963; *State v. Labrum*, 2025 UT 12, ¶ 17, 568 P.3d 1075 (caselaw); *In re C.D.S.*, 2023 UT 11, ¶ 15, 531 P.3d 217 (procedural rules).

## ANALYSIS

¶20 When a party misses the deadline to appeal an order or judgment, rule 4 of the Utah Rules of Appellate Procedure allows the party to move the district court to reinstate the thirty-day period for filing a notice of appeal. Under rule 4(g), a party has a one-year window to do so in civil cases. But in criminal cases, a defendant had no deadline to move to reinstate under a previous version of rule 4(f). UTAH R. APP. P. 4(f) (Jan. 2024). And while rule 4 does not separately address motions to reinstate in postconviction cases, *see id.* R. 4, the PCRA declares that proceedings under its provisions "are civil," UTAH CODE § 78B-9-102(1)(a).

¶21 Here, four years after his PCRA petition was dismissed, Reyos argued to the district court that PCRA actions are "quasi-criminal" and that rule 4(f) therefore should apply to his motion to reinstate, which unquestionably would be too late if rule 4(g) applied.

¶22 In denying Reyos's motion to reinstate, the district court relied on statutory language and caselaw and concluded that "PCRA actions are civil—not quasi-criminal—for purposes of applying Rule 4 of the Utah Rules of Appellate Procedure" and further that "Rule 4 makes no mention of PCRA cases as an exception to Rule 4(g)'s one-year limit to seek reinstatement of appeals in civil matters." This is the decision that Reyos now challenges.

¶23 Below, we first affirm the district court's decision because Reyos's briefing does not establish error. Second, we do not reach the merits of Reyos's other argument because it is unpreserved.

I. BECAUSE REYOS DOES NOT ANALYZE HOW THE DISTRICT COURT ERRED IN INTERPRETING RULE 4, HE HAS NOT SHOWN THAT IT ERRED IN APPLYING RULE 4(g) TO HIS POSTCONVICTION CASE

¶24 On appeal, Reyos asks for the "return [of] his right to appeal" the March 2019 dismissal of his PCRA petition. Motions to reinstate the time to appeal in civil and criminal cases are governed by rule 4. UTAH R. APP. P. 4(f)–(g) (Jan. 2024). And we generally discern our intent and purpose in adopting the rule by interpreting the rule according to its plain language. *See In re C.D.S.*, 2023 UT 11, ¶ 25, 531 P.3d 217.

¶25 As the appellant, Reyos "bears the burden of persuasion on appeal, and this burden includes engaging with and responding to the grounds for the decision [he] is challenging on appeal." *Farm Bureau Mut. Ins. v. Weston*, 2025 UT 42, ¶ 89, 587 P.3d 936 (cleaned up). Indeed, an appellant's principal brief must "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." UTAH R. APP. P. 24(a)(8). This requires grappling with the district court's reasoning; so, for instance, merely copying and pasting the same briefing that was submitted to the district court would fail to meet one's burden. *See Weston*, 2025 UT 42, ¶¶ 88–89. And "it is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." *Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 (cleaned up); *see also Utah Physicians for a Healthy Env't v. Exec. Dir. of the Utah Dep't of Env't Quality*, 2016 UT 49, ¶ 17, 391 P.3d 148 (explaining that an appellant "must take issue with and demonstrate error" in the decision on review and must do so in its opening brief).

¶26 In challenging the denial of his motion to reinstate, Reyos's principal brief barely mentions the district court's decision or rule 4. And he does not press his argument that PCRA proceedings should be treated as criminal cases under rule 4(f). Instead, he catalogues legal history regarding the writ of habeas corpus, including our discussion in *Patterson v. State*, 2021 UT 52, 504 P.3d 92, to support his new request on appeal that we "permit postconviction appeals no matter when they are filed." *See infra* Part II. Though interesting, the argument and support that Reyos puts forth does not address—let alone analyze and demonstrate error in—the district court's decision denying Reyos's motion to reinstate on the ground that the motion was untimely under rule

4(g), which the court applied because it concluded that "PCRA actions are civil—not quasi-criminal." Further, although Reyos responds in his reply brief to the State's defense of the district court's application of rule 4(g), it is waived. *See Allen*, 2008 UT 56, ¶ 8.

¶27 Based on these shortcomings, Reyos has not carried his burden to show error in the district court's conclusion that rule 4(g) applies to PCRA proceedings.

II. WE DO NOT REACH REYOS'S REMAINING CONSTITUTIONAL ARGUMENT THAT THERE SHOULD BE NO DEADLINE FOR MOTIONS TO REINSTATE APPEALS IN POSTCONVICTION CASES, BECAUSE REYOS DID NOT RAISE IT IN THE DISTRICT COURT

¶28 Still, according to Reyos, this appeal calls upon us to reexamine Utah law on the writ of habeas corpus, and he contends that we "should honor the writ's rich history by rejecting time limits on filing postconviction appeals." He also invokes constitutional safeguards in the Suspension Clause, the Open Courts Provision, Due Process guarantees, the Right to Appeal, and the Separation of Powers Clause and asserts that they collectively "stand in stark opposition to the kind of deadlines routinely placed on postconviction appeals." The State responds that this issue is not preserved for appeal. We agree with the State.

¶29 We generally refrain from reaching issues that were not first brought to the district court's attention. *Salt Lake City v. Kidd*, 2019 UT 4, ¶¶ 30–32, 435 P.3d 248. We apply this preservation rule "to every claim, including constitutional questions," unless an appellant establishes that an exception to preservation applies. *Id.* ¶ 31 (cleaned up).

¶30 The preservation rule is important because it promotes "judicial economy and fairness between the parties." *State v. Johnson*, 2017 UT 76, ¶ 8, 416 P.3d 443. Moreover, "it allows an issue to be fully factually, procedurally, and legally developed in the district court," and gives "the appellate court the benefit of a trial judge's reasoning and analysis on the issue at hand." *Baumann v. Kroger Co.*, 2017 UT 80, ¶ 25, 416 P.3d 512; *see also Vega v. Jordan Valley Med. Ctr.*, 2019 UT 35, ¶ 8 n.5, 449 P.3d 31 (explaining that district courts have "the duty . . . to reason through each case and issue decisions based on sound and thorough legal analysis, including constitutional analysis" and that this court is "meant to

be the final review—not the only review—of such issues").[4] To preserve an issue, the district court must be afforded "a meaningful opportunity to rule on the ground that is advanced on appeal, and that implies, at a minimum, not just the invocation of a legal principle but also its application to the facts of the case." *Kidd*, 2019 UT 4, ¶ 33 (cleaned up). "This demands that a party specifically and timely raise the issue with supporting evidence or relevant legal authority." *Park City Mun. Corp. v. Woodham*, 2024 UT 3, ¶ 20, 545 P.3d 221. And the "mere mention of a constitutional right, phrase, or principle does not raise a constitutional claim." *Id.* (cleaned up).

¶31 In applying the preservation rule, "we view issues narrowly." *Ahhmigo, LLC v. Synergy Co. of Utah*, 2022 UT 4, ¶ 18, 506 P.3d 536 (cleaned up). Under this approach, we consider an issue "new" on appeal "when the appellant raises a legal theory entirely distinct from the legal theory the appellant raised to the district court." *Id.* (cleaned up). And while appellants may rely on "new authority or cases supporting an issue that was properly preserved," *Johnson*, 2017 UT 76, ¶ 14 n.2, they may not evade the preservation rule by "broadly defining the issue" raised in the district court, *see Ahhmigo*, 2022 UT 4, ¶ 18 (cleaned up).

¶32 Reyos contends he preserved his constitutional argument because he has "consistently maintained that his right to seek habeas relief under the Utah Constitution cannot be overridden by deadlines or procedural rules." He also insists that his appellate briefing is merely elaborating on his central claim that "under the

---

[4] During oral argument, Reyos's counsel suggested that because we review legal questions de novo, a district court's reasoning "didn't really matter." Not so. As we've explained, an appellant must engage with a district court's reasoning to demonstrate error on appeal. *See supra* ¶ 25. Further, regardless of what standard of review the appellate court applies, the "district court's explanation of its ruling meaningfully assists the appellate process." *Deer Valley Resort Co. v. Olson*, 2026 UT 5, ¶ 16 n.2, 587 P.3d 974. Although appellate courts review pure legal questions anew, a district court's thoughtful consideration and analysis of the relevant issues may, among other things, narrow the issues for appeal and provide a solid analytical foundation for appellate arguments and review. *See State v. Ogden*, 2018 UT 8, ¶ 49 n.14, 416 P.3d 1132 (recognizing the valuable insight provided by trial courts to both the appellate courts and the judicial system in answering legal questions).

Utah Constitution, he has a right to seek this Court's review through habeas corpus."

¶33 Though Reyos mentioned the constitution in his argument below, he did not advance the constitutional argument he now asserts on appeal. To be sure, he mentioned that PCRA actions, which are collateral attacks on criminal convictions, arise out of the Utah Constitution's guarantee of the writ of habeas corpus, and he suggested, in his reply, that the legislature's statutory definition of PCRA actions as civil could constitute a separation of powers violation. But the record shows that to the extent Reyos mentioned constitutional principles, it was only in service of his theory that PCRA proceedings are quasi-criminal and thus any motions to reinstate the time to file PCRA appeals *should* fall under rule 4(f). He did not argue, as he does now, that multiple provisions of the constitution stand as a barrier against the court setting any deadline on the right to file a postconviction appeal.

¶34 Applying our preservation rule to this record leads us to two related conclusions.

¶35 First, Reyos's theory that the constitution requires unlimited time for postconviction appeals is a distinct new theory that he didn't present to the district court and thus it isn't preserved for appeal. *See Ahhmigo*, 2022 UT 4, ¶¶ 16, 18. That is because this theory is quite different from arguing that postconviction cases are like criminal cases and thus fit better under rule 4(f) rather than under rule 4(g) for civil cases. Put another way, Reyos asks us to reverse the denial of his motion to reinstate for untimeliness either because postconviction cases are "quasi-criminal" and should be treated like criminal cases with no deadline under rule 4(f), or because the constitution requires that motions to reinstate the time to file postconviction appeals can never be late. Answering those two questions would require separate and distinct legal analyses. And because the former but not the latter theory was raised before the district court, we deem the constitutional theory unpreserved and refrain from reaching its merits.[5]

---

[5] Reyos asserts in his opening brief that if we reject his argument that PCRA appeals should be permitted "no matter when they are filed," we "should, at minimum, implement a good cause exception or adhere to the *Manning* standard." (Citing *Manning v. State*, 2005 UT 61, 122 P.3d 628, *superseded by rule*, UTAH R. APP. P. 4(f), *as*

(continued . . .)

¶36 Second, we conclude that because Reyos merely mentioned but didn't develop a constitutional argument before the district court, he didn't sufficiently raise and preserve any independent constitutional claim. *See Woodham*, 2024 UT 3, ¶ 20; *Kidd*, 2019 UT 4, ¶¶ 30–33. He did not argue, for example, that applying rule 4(g) to his motion to reinstate would violate a specific constitutional right. Thus, it makes sense that the district court's written memorandum decision did not rule on a constitutional claim, and so we have no such claim properly preserved and presented for our review. For these reasons, we reject Reyos's appellate challenge and affirm the court's denial of his motion to reinstate the time to appeal the dismissal of his PCRA petition.

## CONCLUSION

¶37 We hold that Reyos has not shown that the district court incorrectly applied rule 4(g) to his motion to reinstate the period to file a direct appeal of its March 2019 dismissal of his petition for postconviction relief. We do not reach Reyos's unpreserved constitutional argument challenging deadlines for motions to reinstate appeals in postconviction cases, and we make no rule amendments with this opinion. Accordingly, we affirm.

---

*recognized in State v. Brown*, 2021 UT 11, ¶ 15, 489 P.3d 152.) In addition to challenging this request as unpreserved, the State perceives this as seeking the creation of a rule that allows postconviction petitioners to regain their right to bring untimely appeals. In his reply brief, Reyos states that he "is not asking for a new rule but for a faithful reading of Rule 4(f) in light of the Constitution or . . . some other equitable remedy."

Insofar that Reyos's request would require amending the text of our procedural rules, this appeal would not be the proper avenue to bring about such a rule change. We reiterate our "preference to create procedural rules through our comprehensive rulemaking process, which accounts for consideration of public comment and 'perspectives beyond those of the parties to a case at bar.'" *State v. Mitton*, 2026 UT 11, ¶ 55, 589 P.3d 724 (quoting *State v. Labrum*, 2025 UT 12, ¶ 39, 568 P.3d 1075).